UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-21516-CIV-HUCK/SIMONTON
<u>CONSENT CASE</u>

**CHANNA IMPORTS, INC.,**

    Plaintiff,

v.

**HYBUR, LTD.,**

    Defendant.
_____/

<u>**ORDER**</u>

Presently pending before the Court is Defendant's Motion for Partial Summary Judgment as to Damages (DE # 31). This matter is fully briefed (DE ## 34, 37) and this case has been referred to the undersigned Magistrate Judge based upon the consent of the parties (DE # 21). After a careful review of the record and for the reasons stated herein, Defendant's motion is GRANTED.

    I.    <u>**BACKGROUND**</u>

According to the Complaint, Plaintiff, Channa Imports, Inc., is a corporation that sells oriental carpets. Defendant, Hybur, Ltd., agreed to transport a shipment of its carpets by sea from Florida to Mexico. When the shipment arrived in Mexico, however, $207,968.11 worth of carpets were missing. Channa filed suit, seeking the full value of its loss (DE # 1).

Hybur filed an Answer and Affirmative Defenses denying the substantive claims contained in the Complaint (DE # 3), as well as the instant motion, in which it asserts that its maximum liability is limited under the Carriage of Goods by Sea Act ("COGSA") to $500 per package, or $2,000 total, because Channa shipped twenty pallets of carpets,

each of which constituted a single COGSA package and that four of those pallets were stolen during shipping (DE # 31).  Channa, on the other hand, argues that the Bill of Lading identifies each individual carpet as a separate COGSA package, and thus it is not appropriate to limit Hybur's liability based on the number of pallets (DE # 34).

The method of preparing the carpets at issue here for shipping was described by the undisputed information provided by Channa through its interrogatory responses (DE # 35) and the testimony of its corporate officer and representative, Uri Ben Jehuda (DE # 33).  According to Mr. Ben Jehuda, Channa contacted a shipper, Ocean Express, Ltd., and, on May 9, 2006, prepared the carpets it planned to ship by selecting and scanning the selected carpets in its warehouse, folding them, and then stacking them on wooden, rectangular pallets, called "euro pallets" (DE # 33 at 9).  When the stack reached the standard height of approximately one meter, the pallet was closed (DE # 33 at 9).  The pallets were then covered in black plastic material to keep the carpets dry, and braced with strapping material (DE # 33 at 6).[1]  A packing list was generated to keep track of which carpets were packed in which pallets, but the carpets were not otherwise individually prepared for shipment.  When all twenty pallets were ready, Channa notified Ocean Express to pick them up (DE # 33 at 7).

In its Concise Statement of Material Facts in Dispute, Channa challenged Hybur's statement that "[t]he only packaging preparing with respect to the subject shipment was the placement of carpets on 20 pallets which were banded and shrink wrapped and

---

[1] Mr. Ben Jehuda noted that the "[e]ventually you can put some rolls of carpets on top of the pallets if you want, if you need" but it was not clear whether those individual rolls would be placed on the pallets before or after they were covered in plastic and braced for shipping.  But, because he went on to state that "this was not the case" here, it is an irrelevant detail (DE # 33 at 9).

2

loaded inside one forty foot container" by clarifying that "[t]he goods were placed on the pallets and the 20 pallets were individually wrapped in black plastic and then blocked and braced" (DE # 36 at ¶ 6).[2]

The twenty pallets were loaded onto a container, which was picked up by Ocean Express. Ocean Express prepared a bill of lading – dated May 17, 2006 and bearing the number IOCJ000092 – based on information provided to it by Channa (DE # 33 at 14). Under the heading entitled "Number and kind of packages, description of goods," the bill of lading describes the shipment as "20 PALLETS" in "1 x 40' BOX SAID TO CONTAIN: 1834 ORIENTAL CARPETS." In a separate box, which appears on the bottom of the page and is entitled "Number of Packages (in words) 'SAID TO CONTAIN': –," the word "TWENTY" is printed (DE # 1, Exh. A at 4).

Ocean Express then transferred the container containing the carpets to Hybur. Upon delivery of the cargo, Hybur issued the Bill of Lading at issue in this case. It was signed on June 15, 2006 and bears the number PEVMEX08640. That Bill of Lading, under the heading, "Description of Packages," identifies the goods as "Oriental Carpets S[aid] T[o] C[ontain] 1834 P[ackages]." The Bill of Lading does not reference the number of pallets; instead, under the column heading "No. of," only the forty foot container is listed. (DE # 1, Exh. B. at 6).[3] In its Concise Statement of Material Facts in Dispute, Channa does not directly challenge the fact that the Bill of Lading "makes no reference

---

[2] This statement simply clarifies the undisputed process by which the carpets at issue were packaged; it does not give rise to a genuine factual dispute. *See Burgos v. Chertoff*, 2008 WL 1808370, at *1 (11th Cir. 2008)

[3] Consistent with the undisputed industry practice, "STC," "PKGS," and "1 X 40CT" in the Bill of Lading are used to abbreviate the terms "Said to Contain," "Packages," and "one forty foot container," respectively.

3

to pallets," but adds that the "Bill of Lading refers to 1834 Packages," consisting of each individual carpet (DE # 36 at ¶ 8).

## II. LEGAL STANDARDS

### A. Summary Judgment

According to the Federal Rules of Civil Procedure, summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). All of the evidence, and any justifiable inferences that can be drawn therefrom, must be viewed in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is material if it is a legal element of the claim under governing law that could affect the outcome of a case. *Burgos v. Chertoff*, 2008 WL 1808370, at *1 (11th Cir. 2008). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

### B. Carriage of Goods by Sea Act

The parties agree that the Carriage of Goods by Sea Act ("COGSA"), 46 App. U.S.C.A. §§ 1300, *et seq.* (2006), is applicable to this lawsuit (DE # 31 at 4; DE # 34 at 3).[4] The parties further agree that the relevant COGSA provision provides:

---

[4] To the extent that there is any dispute over COGSA's application to the facts of this case, the Bill of Lading contains a provision that mirrors COGSA's limits of liability for packages (DE # 1, Exh. A at 7, ¶ 17) ("In the event of loss, damage or delay to or in connection with goods exceeding in actual value the equivalent of $500.00 . . ., per package or in case of goods not shipped in packages, per shipping unit, the value of the goods shall be deemed to be $500.00 per package or unit").

> **Neither the carrier nor the ship shall . . . be . . . liable for any loss . . . in connection with the transportation of goods in an amount exceeding $500 per package . . ., or in case of goods not shipped in packages, per customary freight unit . . ., unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. This declaration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier.**

46 App. U.S.C.A. § 1304(5) (2006).[5]

In light of the fact that COGSA does not define "package," as well as the diverse methods by which various items are packed for shipping and the advancements in technology that outpace existing law on the subject, courts are often called upon to determine whether a particular item (or collection of items) constitutes a "package" under the meaning of COGSA.  *See Fireman's Fund Ins. Co. v. Tropical Shipping and Constr. Co.*, 254 F.3d 987, 997 (11th Cir. 2001).  In order to constitute a "package," as that term is used in COGSA, the cargo, "irrespective of [its] size, shape or weight" must have undergone "some packaging preparation for transportation . . . which facilitates handling, but which does not necessarily conceal or completely enclose the goods."  *Id.* (citing *Aluminios Pozuelo, Ltd. v. S.S. Navigator*, 407 F.2d 152 (2d Cir. 1968)).

The Eleventh Circuit Court of Appeals has identified the Bill of Lading as the "touchstone" of a COGSA liability analysis because it constitutes the "contract of carriage."  *Id*. (citing *Fishman & Tobin v. Tropical Shipping & Constr. Co.*, 240 F.3d 956, 961 (11th Cir. 2001) and *Hayes-Leger Assocs., Inc. v. M/V Oriental Knight*, 765 F.2d 1076, 1080 (11th Cir. 1985)).[6]  Although the Bill of Lading is "important evidence" of the parties'

---

[5] Although the parties refer to the Carriage of Goods by Sea Act as it appears in 46 App. U.S.C.A. §§ 1300, *et seq.* (2006), the current version of COGSA is found at 46 U.S.C.A. § 30701 note (2007).

[6] As the Supreme Court has noted, a bill of lading is, "essentially, [a] contract . . . for the transportation of goods . . . .  A bill of lading records that a carrier has received

5

intent, the Bill of Lading is not absolutely determinative of whether an entry in the Bill of Lading constitutes a "package" under COGSA. *Id*.

While an unambiguous Bill of Lading must be construed according to its plain terms, the number of packages listed on a Bill of Lading may be disregarded if (1) the Bill of Lading is subject to a genuine ambiguity;[7] (2) the parties have clearly manifested a contrary intent; or (3) the number in the Bill of Lading refers to items that cannot possibly be defined as COGSA packages. *Id.* at 997-98 (citing *Seguros "Illimani" S.A. v. M/V POPI P*, 929 F.2d 89, 94 (2d Cir. 1991)).

If the Bill of Lading understates the number of COGSA packages being shipped, the carrier's liability is limited "based on the number of packages stated in the bill of lading." *Hayes-Leger Assocs., Inc. v. M/V Oriental Night*, 765 F.2d 1076, 1082 (11th Cir. 1985). Where, as here, the Bill of lading overstates the number of COGSA packages being shipped, however, "the COGSA liability limitation should be applied to the actual number of packages" in transit. *Id.*

### III.    THE PARTIES' POSITIONS

Hybur begins, as it must, with the language contained in the Bill of Lading; and, Hybur admits, as it must, that the Bill of Lading – under the heading entitled "Description

---

goods from the party that wishes to ship them, states the terms of carriage, and serves as evidence of the contract for carriage." *Norfolk S. Railway Co. v. Kirby*, 543 U.S. 14, 18-19 (2004).

[7] Ambiguities in bills of lading are ordinarily construed against the issuing carrier, which is Hybur in this case. *See Fireman's Fund Ins. Co. v. Tropical Shipping and Constr. Co.*, 254 F.3d 987, 997 (11th Cir. 2001) (citing *Sony Magnetic Prods. v. Merivienti O/Y*, 863 F.2d 1537, 1542 (11th Cir. 1989)). The undersigned notes, however, that Hybur argues that the number of packages listed on the Bill of Lading should be disregarded because loose carpets cannot possibly be considered COGSA packages, and not because of the presence of an ambiguity in the Bill of Lading.

6

of Packages" – identifies the cargo as being "said to contain 1834 packages." (DE # 31 at 4). Nevertheless, Hybur, to extricate itself from the language contained in the Bill of Lading, asserts that an individual oriental carpet cannot possibly constitute a COGSA package. Hybur contends that "it is well established that loose items to which there has been no packaging preparation, such as the individual carpets at issue here, do not constitute COGSA packages, even if the bill of lading describes them as packages" (DE # 31 at 4-5) (citing *Orient Overseas Container Line (UK), Ltd. v. Sea-Land Serv.*, 122 F. Supp. 2d 481, 488 (S.D.N.Y. 2000); *Nichimen Co. v. M.V. Farland*, 462 F.2d 319 (2d Cir. 1972)). Because the carpets themselves cannot be COGSA packages, Hybur concludes, the twenty pallets to which they were secured must be the relevant COGSA packages and, therefore, its liability is limited to $2,000, or $500 for each one of four pallets of carpets which were lost during the voyage from Florida to Mexico (DE # 31 at 5).

Channa responds by first pointing out the obvious; namely, that the Bill of Lading refers to "1834 packages," and does not mention pallets at all. In short, Channa argues, "[t]here is absolutely no basis for [Hybur's] claim that the pallets," as opposed to the carpets themselves, "were the COGSA packages," as indicated on the Bill of Lading (DE # 34 at 2). In support of its argument that each of the 1,834 individual carpets, and not the twenty pallets, represent the relevant COGSA packages, Channa cites a number of cases in which pallets were found not to be COGSA packages (DE # 34 at 6-9).[8]

---

[8] Channa cites the following cases, in which the items appearing in parentheticals, rather than the pallets on which they were loaded, were found to be COGSA packages: *Hayes-Leger Assocs., Inc. v. M/V Oriental Night*, 765 F.2d 1076 (11th Cir. 1985) (bundles of woven baskets and rattan furniture); *Sony Magnetic Prods., Inc. v. Merivienti*, 668 F. Supp. 1505 (S.D. Ala. 1987) (1,320 cartons of video cassettes); *Ins. Co. of N. Am. v. M/V Frio Brazil*, 729 F. Supp. 826 (M.D. Fla. 1990) (12,000 cartons of orange juice); *Zurich Int'l France v. P&O Containers, Ltd.*, 99 F. Supp. 2d 1354 (S.D. Fla. 1999) (2,270 cartons of cosmetics); *Vegas v. Compania Anonima Venezolana de Navegacion*,

**Channa also argues that, even if the Court is not inclined to find that the carpets were COGSA packages as a matter of law, the question is one of material fact that precludes summary judgment in light of the fact that Hybur's representative confirmed that the Bill of Lading identifies 1,834 packages and Channa's interrogatory responses, in which it stated that it "shipped 1,834 oriental carpets on 20 pallets" (DE # 34 at 3). In this vein, Channa cites cases in which courts have denied motions for summary judgment based on the fact that the bills of lading were ambiguous as to how the parties intended to calculate the number of COGSA packages where the bills of lading listed both the number of pallets as well as the number of bags or other potential COGSA packages (DE # 34 at 9). *See Allied Chemical Int'l Corp. v. Compania De Navegacao Lloyd Brasileiro*, 775 F.2d 476 (2d Cir. 1985); *MacClenny Prods., Inc. v. Tropical Shipping and Constr. Co.*, 832 So. 2d 888 (Fla. 4th DCA 2002).**

**Finally, Channa cites *Group Chegaray/V. De Chalus v. P&O Containers*, 251 F.3d 1359 (11th Cir. 2001), as an example of a case in which the Court found that pallets were found to be COGSA packages, but only to demonstrate its point by way of juxtaposition because the Eleventh Circuit in *Group Chegaray* based its holding on the fact that the "bill of lading could not have been more clear" that the parties intended the pallets to constitute COGSA packages, whereas here it is not clear whether the 20 pallets were meant to constitute COGSA packages since the Bill of Lading only mentioned the 1,834 individual carpets (DE # 34 at 10-11).**

**In its reply brief, Hybur contends that Channa's brief does not address its main**

---

720 F.2d 629 (11th Cir. 1983) (109 cartons of brake parts); *MacClenny Prods., Inc v. Tropical Shipping and Constr. Co.*, 832 So. 2d 888 (Fla. 4th DCA 2002) (individually wrapped jackets); *Interested Underwriters v. Seafreight Line, Ltd.*, 971 So. 2d 892 (Fla. 3d DCA 2008) (1,175 cartons of perfume).

argument that the loose carpets cannot constitute COGSA packages, because most of the cases cited by Channa involve cartons of goods rather than loose wares, which sets those cases apart from this case (DE # 37 at 2). Hybur concludes that in order to be a COGSA package, there must, in fact, be some element of packaging; and, since the only packaging that the carpets underwent prior to shipping was to be placed on pallets, the pallets must be considered COGSA packages even though they are not listed as such in the Bill of Lading (DE # 37 at 3).

### IV. LEGAL ANALYSIS

Individual carpets that are simply folded and placed on a pallet for shipping are not each in their own right a COGSA package. Therefore, the number of packages at issue in this case is twenty, representing the number of pallets shipped, notwithstanding the fact that the Bill of Lading describes each of the 1,834 carpets as an independent COGSA package.

The law in this Circuit is clear that

> [t]he meaning of "package" [under COGSA] can . . . be said to define a class of cargo, irrespective of size, shape or weight, to which some packaging preparation for transportation has been made which facilitates handling, but which does not necessarily conceal or completely enclose the goods

*Aluminos Pozuelo, Ltd. v. S.S. Navigator*, 407 F.2d 152, 155 (2d Cir 1968); *accord Fishman & Tobin, Inc. v. Tropical Shipping and Constr. Co.*, 240 F.3d 956, 960 (11th Cir. 2001) ("We previously adopted the Second Circuit's definition of 'package' [under COGSA]") (citing *Aluminos*)). Conversely, what has been described as "freestanding cargo in a 'loose condition'" is not a package for the purposes of COGSA. *Taiwan Power Co. v. M/V George Wythe*, 575 F. Supp. 422, 423 (N.D. Fla. 1983) (citing *Caterpillar Americas Co. v. S.S. Sea Roads*, 231 F. Supp. 647 (S.D. Fla. 1964), *aff'd*, 364 F.2d 829 (5th

Cir. 1966)); *accord Hayes-Leger Assocs., Inc. v. M/V Oriental Knight*, 765 F.2d 1076, 1081 n.9 (11th Cir. 1985).

In this case, Channa stacked its carpets on twenty pallets to prepare them for shipping, and the pallets were then covered in plastic and secured with straps. The pallets, therefore, constitute COGSA packages. *See Fishman & Tobin*, 240 F.3d at 961 ("Any grouping demonstrating some preparation may be considered a package."). The carpets themselves, on the other hand, were simply scanned and lifted onto the pallets, but there is no indication that they were wrapped, bagged, braced or prepared any way to facilitate their individual handling during shipment as required to satisfy COGSA's definition of a package. *See Hayes-Leger*, 765 F.2d at 1081 n.9 ("[I]f the shipper intends to rely on the description portion of the bill of lading to disclose to the carrier the number of COGSA packages in a container, that description must indicate the number of items qualifying as packages (i.e., connoting preparation in some way for transport), such as bundles, cartons, or the like.") (internal citations and quotation marks omitted); *Taiwan Power Co.*, 575 F. Supp. at 423.

Hybur correctly points out in its reply brief that the cases cited by Channa in which courts concluded that cartons were COGSA packages even when they were placed on pallets are inapposite because cartons are COGSA packages in their own right since they are "package[s] for transportation . . . which facilitate[ ] handling," whereas individual, folded carpets are not. The fact that the Bill of Lading lists each of the 1,834 carpets as its own COGSA package is of no moment because this Court is obligated to look past the Bill of Lading in cases where "the number [of packages] refers to items that cannot qualify as 'packages'" under COGSA. *See Fireman's Fund Ins. Co. v. Tropical Shipping and Constr. Co.*, 254 F.3d 987, 997 (11th Cir. 2001) (quoting *Seguros*

*"Illimani" S.A. v. M/V POPI P*, 929 F.2d 89,94 (2d Cir. 1991)); *Orient Overseas Container Line (UK), Ltd. v. Sea-Land Serv., Inc.*, 122 F. Supp. 2d 481 (S.D.N.Y. 2000) ("[T]he case at bar does not turn upon the reference in the bill of lading to the engines as 'packages'; rather, it turns upon whether the engines qualified as COGSA packages, without regard to their description in the bill of lading.").

The two remaining cases, which did not involve cartons, do not alter the analysis because they are distinguishable from the instant case. First, in *Hayes-Leger*, the individual baskets and pieces of furniture at issue "were prepared for shipping . . . in the manner customarily used for these types of goods."[9] The Eleventh Circuit concluded that the District Court was correct that those *bundles* of goods which "were in fact wrapped, tied, or bound together in distinct groups" – but not necessarily the individual pieces of furniture – represented COGSA packages. 765 F.2d at 1082. Second, *MacClenny Prods., Inc. v. Tropical Shipping and Constr. Co.*, is distinguishable because the jackets which were found to constitute COGSA packages were "individually wrapped." 832 So. 2d 888, 891 (Fla. 4th DCA 2002).[10] Unlike the bundles in *Hayes-Leger*

---

[9] "Specifically, the larger pieces of furniture were tied together in pairs, their arms and legs wrapped in paper, and separated from other items with cardboard; the trays were stacked and tied together as were the magazine racks and woven wreaths; the basket sets or individual baskets of the same size not shipped in sets were pre-grouped and tied together with string, rattan or plastic and then stacked inside the containers in groups, usually in groups or [sic] two to five; and the decorative ducks and chickens and other miscellaneous items were individually wrapped or boxed." *Hays-Leger Assocs, Inc. v. M/V Oriental Knight*, 765 F.2d 1076, 1078-79 (11th Cir. 1985).

[10] The undersigned notes that *MacClenny Prods., Inc. v. Tropical Shipping and Constr. Co.* was decided based on an "inherent ambiguity" between the way the cargo was described on the bill of lading on the one hand and shipping documents that provided a more reliable indication of how the cargo was packaged on the other. 832 So. 2d 888, 890-91 (Fla. 4th DCA 2002). It does not address Channa's novel proposition that each individual carpet in this case is a COGSA package simply by virtue of the fact that it described as such on the Bill of Lading, despite the fact that no carpet was individually

11

and unlike the jackets in *MacClenny*, the evidence in the record of this case establishes that Channa did not group its carpets in bundles smaller than the pallets on which they were stored and shipped, nor were they were individually wrapped in any manner whatsoever.  Thus, there is no basis for concluding that each of the 1,834 carpets as a COGSA package simply because they are listed that way on the Bill of Lading.  *See Orient Overseas Container Line (UK), Ltd. v. Sea-Land Serv., Inc.*, 122 F. Supp. 2d 481, 487-88 (S.D.N.Y.2000) ("To determine whether particular objects 'may reasonably be considered COGSA packages,' . . . the form of a bill of lading's wording cannot be exalted over the substance of the cargo.")

While it has no bearing on the resolution of this matter, the undersigned notes that there are two bills of lading concerning the shipment of carpets at issue in this case.  The Bill of Lading giving rise to the instant motion reflected the contract of carriage between Ocean Express and Hybur, but it did not include Channa as a formal party.  This Bill of Lading, as discussed above, described the cargo as consisting of one forty foot container and 1,834 "packages," without mentioning the pallets which are the only cognizable COGSA package.  The bill of lading which is not presently at issue, on the other hand, reflected the contract of carriage between Channa and Ocean Express.  That bill of lading, which Channa's representative admitted was generated based on information provided directly from Channa (DE # 33 at 14), was crystal clear that the number of "packages" being shipped consisted of twenty pallets.[11]  The record therefore

---

prepared and packaged for ocean transport.

[11] The bill of lading generated based on information provided by Channa, described the "Number and kind of packages" as "20 PALLETS," and repeated, at the bottom of the page, that the "Number of Packages (in words)" is "TWENTY" (DE # 1, Exh. A at 4).

**12**

indicates that Channa itself conceived the pallets, not the carpets, to constitute COGSA packages and indicates that Channa, ironically, would have to rely on the imprecise Bill of Lading executed between co-defendants Hybur and Ocean Express in order to justify the unexpected windfall that it would enjoy if each individual carpet were construed to be a COGSA package.

Because Hybur's motion only seeks to impose a $2,000 limit on Channa's recovery against it, the Court expressly reserves judgment as to whether Hybur is liable at all, or whether it is liable to Channa for an amount of damages less than $2,000. It is, accordingly,

**ORDERED AND ADJUDGED** that Defendant's Motion for Partial Summary Judgment (DE # 31) is **GRANTED**, and Defendant's liability is limited to $2,000.00

**DONE AND ORDERED** in Chambers, in Miami, Florida, on July 25, 2008.

_____
**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**

Copies to:
All counsel of record